United States Citizenship and Immigration Services. Mr. Forney for the appellant, Mr. Goldsmith for the appellant. Good morning, counsel. Mr. Forney, please proceed when you're ready. Thank you, Your Honor. May it please the court, Jeffrey Forney for appellant, iTech U.S., Inc. The court must start from the presumption that Congress intended judicial review of HIV It's a longstanding presumption. It's embedded in the Administrative Procedure Act and has been long recognized by the Supreme Court. Absent clear and convincing evidence to the contrary, based on the text and structure of the statute at issue, the court has jurisdiction to review the agency's action. That guideline defeats the government's claim that petition revocations under Section 1155 are not subject to judicial review. The overarching statute in question, which potentially, at least in the government's view, triggers the lack of judicial review, starts with Section 1252A2B2. That provision removes the court's jurisdiction to review any decision or action specified to be in the discretion of the Secretary of Homeland Security. But revocation decisions under Section 1155 do not come within the ambit of that provision because Section 1155 does not specify that revocation decisions are within the discretion of the Secretary of Homeland Security or his delegate, in this case, USCIS. Your theory has to be that specify imposes a magic words requirement. No. 1155 is as discretionary as discretionary can be. You have a may, you have an at any time, and you have a for what he deems. That exudes discretion. The only thing you don't have is the D word. So, what, what, what are you arguing, what, what could you be arguing for other than magic words. Well, you don't need magic words, that's correct. But if you look at the statutory history and structure of the statute, which is one of the guidelines that the Supreme Court says you need to do in cases like this where the government is arguing no judicial review. So, a companion provision regarding visa revocations under Section 1201 I, which was enacted at the same time as the petition revocation provision. Section 1201 I uses the word discretion and has always used that word. Those two provisions have been amended at the same time over the years and Congress specifically buttressed the lack of judicial review in visa revocation cases, but never touched 1155 to indicate that That absence of the word I believe in this context is very notable. And although Your Honor is right, magic words are not required. That statutory history and the structure is very indicative of congressional intent. They certainly know how to say when they want an agency decision to be immune from judicial review and they just haven't done that specifically in the context of 1155. Now, regarding the other words that Your Honor pointed out that are in 1155, let's take them each in turn. For example, the phrase at any time doesn't in itself indicate discretion. It simply indicates that at least within a notable range that there's no statute of limitations. Other provisions in the statute have statute of limitations like revocations or rescission of adjustment of status under a later provision. For example, section 1256 has a five-year statute of limitations. So Congress just simply indicated there wouldn't be in the ordinary course of statute of limitations on revocation. With the other two pieces of it, that's at any time, but with May and with Deem, those are both aspects of the statute that we pointed to in our decision in ZHU. Yes, that's correct. ZHU is not controlling because, of course, unlike what the government wants the court to do and what they've asked other courts to do is to parse words, the appellant's position is that you can take all these terms together, it still doesn't impute discretion. For example, in ZHU, the court read all of those terms together, deems to be in the national interest. So that word deems is significant in that context because, of course, national interest presents a spectrum of options that are not amenable to judicial review. In that case in ZHU, it involved, of course, the second preference petition that was denied, but there were no judicially manageable standards because, again, in order to obtain a waiver in that context, the Secretary of Homeland Security has to find it's in the national interest. That's just not amenable to any judicial standard. There's nothing for the court to evaluate. And that followed, as the court indicated, from Webster v. Doe, which involved a similar type of situation where the head of the CIA could determine the dismissal of employees for what he deemed to be in the national interest. And interestingly, in that case in Webster v. Doe, that statute also said in the discretion of the director of the CIA. I think with both Webster v. Doe and this court's decision in ZHU counsel is that statutory terms have to be taken together as a whole. You can't parse words and count them up and then say, in the end, we think there's discretion here. They have to be taken together. And the critical terms to be taken together with deems at any time in May is good and sufficient cause. That good and sufficient cause standard is specifically referencing, as the statute indicates in 1155, the standards under 1154 have to do with petition adjudications. And that statute actually provides manageable standards. There has to be fact finding and facts have to fall within the particular visa classification that's at issue. Those standards are defined by 1153. So in order to find discretion in this case, without that term specifically being used, which it's not, the court would really have to ignore the import of good and sufficient cause. It seems like the word deems is doing some work here because in ZHU, I understand your point that ZHU involved a statute that referred specifically to the national interest. Now, I mean, we could have a debate about whether national interest is more indicative of deference than good and sufficient cause. I don't know that there's a clear answer to that. But what ZHU emphasized was that the word deems preceded it. And that's why the parenthetical of Webster versus Doe highlights and italicizes the word deems. And that's what makes this seem awfully discretionary is that it is what he deems to be good and sufficient cause. And that seems to give the person that's making the determination of good and sufficient cause a wide berth of discretion to make that determination because it's whatever he deems. Well, deems means judgment, a decision. If the statute just simply said he can revoke if he deems so, without any other reference to other statutory provisions or good and sufficient cause, I have to agree with you. It would be completely open-ended, there'd be no judicially manageable standards or discernible standards at all. But the fact that it's good and sufficient cause means the judgment can't just be free-floating, disconnected. But, counsel, the statute could just say the secretary for good and sufficient cause may so-and-so, may revoke. And then perhaps your argument would be well taken. But I think the point of the prior question is that it doesn't say the secretary may for good and sufficient cause. It says deems, what he deems or she deems to be good and sufficient cause. And I think the point of the prior question is that in that context, deems has to do some work. Why isn't that the case? Well, deems certainly does some work. The statute indicates that, of course, it's the Secretary of Homeland Security's decision. It's his or her judgment, as deems indicates. But, again, that judgment can't be disconnected from any standards because there has to be some baseline. What is good and sufficient cause? And then deems is a free-floating term that controls everything else. It would apparently negate the reference to 1154 that's specifically noted in Section 1155. So those standards just disappear because there's the word deems. The conclusion that the government wants the court to come to and that, unfortunately, other courts haven't come to except for the Ninth Circuit, is that you basically have to ignore any kind of import of good and sufficient cause. But, at minimum, the fact that good and sufficient cause is there in the statute and there's a reference to 1154, at minimum, creates an ambiguity. And without ambiguity, there's no clear and convincing evidence that the court is stripped of jurisdiction. Okay, let me make sure my colleagues don't have further questions for you at this time. We'll give you a bit of time for rebuttal, Mr. Horney. Thank you. Why don't we hear from the government, Mr. Goldsmith? Your Honor, may it please the court, Aaron Goldsmith on behalf of the government. I'd like to begin by talking about the ZHU decision that was just referenced a few minutes ago because I want to clarify a point. There were two different statutes that were interpreted in that case, and there were, in effect, two different holdings. One of them is controlling here, and that is its interpretation, this court's interpretation of 1252A2B2. It specifically addressed the question of whether or not a provision needs to use the word discretion in order to fall within the scope of 1252A2B2. And this court said it does not need to use that word. Now, it then went on to interpret another provision involving the waiver of labor, but that's a different provision. That may not be controlling, although I think it does provide some guidance since it uses two of the same words that 1155 uses here. And not only was that this court's reading of 1252A2B2 in ZHU, but the Supreme Court in Kucanen, footnote 13, read 1252A2B2 in the exact same way for the same reason. Now, I know that wasn't central to the Kucanen decision, but the clear import is that 1252A2B2 does not require the use of the word discretion in order for a provision to fall within its scope. Can I ask, on 1252A2B2, if I said that right, yeah, 1252A2B2, can I ask the following question, which is, if the Secretary denies a petition, that's reviewable. But then if the Secretary revokes a petition, the approval of a petition, it's not reviewable. And it just lends itself to the following situation, potentially, which is that the Secretary denies, and then there's judicial review, and the court sends it back and says the grounds for denial is erroneous. And the Secretary says, okay, well, then I'm granting, and then I'm turning around and revoking it for exactly the same reason. I want to address that concern. Of course, the presumption of regularity cuts against that, but let's just assume your scenario. There is a distinction between denials and revocations, and presumably when an agency says it's revoking something, it actually is revoking it. But under your scenario, I'm not sure that's true. If an agency were foolish enough to approve something and then immediately revoke it, it seems that that would be in substance basically a denial, not a revocation, that the law deals in substance and not in formalities and labels. It would be akin to an agency trying to, let's say, deny a petition, and then writing at the top of the page, it's a revocation and claiming it falls within 1155. That wouldn't pass muster. The court still looks to see, is this in fact a revocation? You can't just get out of that by labeling it a different way. I'm sorry, what's the difference between the two in this line of reasoning? Between a revocation and a denial? Well, just the plain meaning of the words, if in the first instance it's a denial, it's made a decision. If it has in substance initially approved something, it's found that they meet the standards set forth by statute or regulation or AO decision. And then subsequently, as in here, they revoke it. This was not like the hypothetical that was just posed to me in that it was over two and a half years later. But your answer to the hypothetical suggests that the revocation power, which on its face seems to be purely discretionary, might, for structural reasons, have limitations built into it. Right. You're saying something that looks like a revocation might actually be an improper denial. I'm saying that the scenario that was outlined would never come up in practice. So it's a difficult hypothetical to address, given the presumption of regularity. And the question was, well, but if it did come up, how would a court, you know, how would it be handled? And I think that's how a court would look at it, would look at the substance of what it is. Now, you know, I'm not sure that's necessarily the right answer, but I think that's how, as a practice, courts would look at it, if that situation ever came up. I mean, I guess one way to conceive of that kind of hypothetical is, correct me if I'm wrong, that whatever work that hypothetical would do on behalf of appellant's position, it would be equally true for even the granting of reliefs that are specified in Roman at one. In that, if the second, you could have the same dynamic play out under Roman at one. If I'm thinking about it right, maybe I'm not. But if I'm thinking about it right, you could have the same dynamic play out under Roman at one, because there could be a judgment regarding the granting relief under one of the specified provisions, i.e. a denial of relief. A court could would have judicial review of that. Oh, no, the court wouldn't have judicial review to begin with. I see. Right now, subsection one and two should be read in harmony. There is a difference that opposing counsel brought up or was sort of alluded to, which is that for subsection one, it uses the word judgment, whereas subsection two uses decisional action, which is presumably broader. So there is a little bit of a difference there. Congress didn't define what judgment means, but it is presumably narrower than any other decision or action. So I'm not sure how that would exactly play out in your situation. You still have that potential dynamic at play, then, with respect to this provision, because you could have the denial of a petition, followed by judicial review that said the grounds for denial is wrong, followed by a revocation that is on the same ground on which the denial was deemed to be wrong. You could have that. I'm not saying that necessarily means that your reading is wrong. At the end of the day, it just seems like a feature of the judicial review provisions, as you outlined them, is that you could have that dynamic play out, and the result at the end of the day would be no judicial review. Unless, as you say, a court would say, well, effectively, even though you're saying, you, the Secretary, are saying it's a revocation, we are deeming it, to use a word, we're deeming it to be a denial in this context, in substance, and therefore we're going to say it is reviewable, as if it were a denial all along. Your Honor, it is a difficult hypothetical to address, but I think how courts would address it if it ever came up was they would say it is, in substance, a denial. And just to move on, about the Buchanan opinion, just because it's been referred to a couple times, in footnote 13, it reads 1252A2B2 the same way that this court did in Zou, and there have been four circuit courts that have addressed this precise issue since Buchanan, and they've all come to the same conclusion, that 1252A2B2 bars judicial review of revocation decisions, that it is just the plain text, as the Seventh Circuit has said, it's hard to imagine a clearer grant of discretion than the language of 1155, and that this case is, at heart, a case about statutory construction, about what the words mean. And when you read these two provisions together, there's only one outcome, and that is that there is no judicial review of revocation decisions, and as a result, the decision of the district court dismisses this case. Can I ask you one last question, at least for my purposes, I think, which is, are you aware of any other decision or action of the Attorney General that's specified to be within the discretion of the Attorney General or Secretary that would not be considered a judgment regarding granting of discretionary relief? I'm sorry, I don't understand. Okay, so let me lay the groundwork for this. So, Romanet I deals with judgments regarding the granting of relief. Romanet II, what you've argued is, it speaks more broadly than that, because it talks about any other decision or action that's specified to be within the discretion. And then, at the end of Romanet II, it carves out the granting of relief under the asylum provision, which is also the granting of discretionary relief. Now, what the other side says is, this whole thing, especially if you take into the title, is about denials of discretionary relief, but yet this decision, the one that's particularly at issue in this case, doesn't have to do with discretionary relief. And so, you shouldn't read any other decision or action to go beyond discretionary relief. Your position is, well, if you look at the plain text of those terms, they're not limited to discretionary relief. They extend beyond that. And I guess my question is, is there any other provision that you're aware of in which this same dynamic comes into play, which is that it's true that it doesn't involve discretionary relief, but it's still a decision or action that's subject to discretion and therefore outside the bounds of discretion. Two-part answer. Just quickly, 1252 also has this word authority. So, it's not just discretionary decisions or actions. It's if the authority to take that decision or action is specified to be in the discretion of the agency. Just to clarify that point. In terms of the point of the title, we've already addressed why we don't think the title is controlling, but we also note that 1252, the overall title of it, speaks of review of orders of removal. And yet, if you look at the text of 1252, it includes a number of types of situations that are not bound, that don't arise in the context of orders of removal. The overall title is judicial review orders of removal, but the text expands that in other contexts. And that's why this is particularly not a persuasive clue as to the meaning of what Congress intended in this particular context. And I would also note that immigration law is different from some other areas of law in that sometimes Congress speaks to a particular subject with a comprehensive reform that is either not amended or amended once to address a particular loophole. But that's not how immigration law is developed. That's not how the IAA has developed. It was drafted and enacted in 1952, and then it's been amended in a piecemeal manner. So, the titles don't necessarily match up with all the text that's underneath the matter. And moreover, just generally, and I see my time has expired, so I'll wrap up on this thought, that titles, by their nature, tend to be summaries and therefore can be under-inclusive in that they don't address every term or condition or every qualifier. Right. So, let me just try one more time, and maybe I'm not articulating this correctly, but let's just assume for present purposes I don't doubt anything you're saying about the persuasive force of a title. So, I take the point on that. My question is just a practical one. For this provision that deals with revocations under 1155, the government's argument that it's immune from judicial review is that it's a decision or action of the, and then go on under Roman at two. And the other side says, well, wait a minute, this whole provision is about discretionary relief. This particular decision or action doesn't have anything to do with discretionary relief. And my only question is, is there any other example of a situation that you're aware of as a government in which you would say, this too, like an 1155 revocation, is a decision or action, the authority for which is specified to be within the Secretary's discretion and therefore immune from judicial review, even though it doesn't involve the grant or denial of discretionary relief? It may not be, it just may be that there isn't any other one. I'm just curious to know whether you're aware of any other decision or action that brings this issue into play. The one partial answer I can come up is, if you look at, and it appears in subsection one, it's 1255 is adjustment of status, the granting of a green card. Certainly there's discretion involved, but would we describe, and I agree that a green card is a benefit. In everyday language, we wouldn't call that necessarily relief. That's not necessarily the word we can, so that's a partial example, although not, I can't think of another one at this moment, Your Honor. Okay. Just one more question for me, which is probably a variation on the theme of the Chief Judge's first question, which is, on your reading of the statutes, there's a very odd disconnect between the standards on the front end for the eligibility determination, which are objective and mandatory, and what you say is the wholly open-ended, unbounded discretion to revoke. So let's say, assume hypothetically the statute, the eligibility determination, instead of saying advanced degrees, let's say it said college degrees. And assume the secretary revokes, grants a visa, and then revokes it, and he says, I'm revoking this because you have a college degree, but I don't think that's good enough. I want an advanced degree. Would that be lawful? Your Honor, it might not be lawful, but it also might not be reviewable in the court, because the agency has come up with an administrative remedy for that. That is, the remedy by regulation they've come up with is an appeal to the Administrative Appeals Office to, I mean, I recognize your larger point. In other words, so I guess where I'm going with this textually is another possible reading of 1155 is to say good and sufficient cause doesn't just mean anything the secretary thinks, which would be a plausible reading if you just had 1155 by itself, but if you construe 1155 together with 1153, good and sufficient cause might mean the secretary thinks there's a changed circumstance or the original adjudication was wrong, but he still has to measure the revocation against the substantive, judicially manageable, mandatory standards of 1153. I think addressing your larger point is, I recognize that an agency is not always right, that agencies do make mistakes. I get your point on that, but Congress made a policy choice, whether it was a good policy choice or not, to make certain decisions not reviewable. And 1252A2B2 applies to some set of decisions or actions. We can disagree as to which ones, but for the reasons we set forward, we think that 1155 falls within the scope of that. Obviously, there's always this argument that an agency is not correctly interpreting the statute or regulations or whatnot, but that isn't enough to overcome a bar of judicial review when Congress has spoken to it clearly, and this court has already found that 1252A2B2 is such a bar. Okay, let me make sure my colleagues don't have additional questions for you, Mr. Goldsmith. Thank you. Mr. Forney, we'll give you two minutes for your rebuttal. Thank you, Your Honor. Let me just address the two hypotheticals that Your Honors put forward. The first hypothetical about immediate revocation after a remand from a court or a court indicating that the initial approval denial was incorrect. It's just a type of absurd situation that is actually permitted by allowing complete impunity to the Secretary of Homeland Security and not allowing for judicial review in this context. And the response that my learned opposing counsel made, I think, punctuates that point because if they just simply revoke and say, okay, well, fine, our denial was wrong, we'll approve it, and now we'll immediately turn around and revoke. His response doesn't make much sense because the government would actually argue that, no, it's a revocation. You can't look beyond the face of the documents. Revocation falls within 1155, no review. This is exactly the reason why there is a presumption of judicial review to avoid this type of administrative caprice. And then I think a point that's been missed, and I do want to emphasize this, it's in our briefs, but I don't want to make sure it's lost, is that the Board of Immigration Appeals has historically viewed 1155 as importing substantive standards from 1154 and 1153 that govern petition adjudications. And some courts have dismissed that by saying, well, it doesn't matter because Congress apparently didn't know of the BIA's decision. I think that misses the larger point because Congress specifically said by statute that the Attorney General's decisions of law are controlling. Attorney General's delegate in this case has had a longstanding interpretation to import judicial standards, excuse me, substantive standards into 1155, and that point cannot be missed. It has to be incorporated in there. That's what Congress wanted. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan, Wilkins, Katsas